UNITED STATES v. LEHIGH VALLEY R. CO.

(District Court, E. D. Pennsylvania. June 5, 1908.)

No. 5.

On Motion for New Trial.

J. Whitaker Thompson, John C. Swartley, and Cuther M. Walter, for the United States.

J. Wilson Bayard, for defendant.

J. B. McPHERSON, District Judge. Since this case was tried, and since the motion under consideration was argued, the Supreme Court of the United States has decided the case of St. Louis, etc., Railway Co. v. Taylor, 28 Sup. Ct. 616, 52 L. Ed. ——, which, as I understand the matter, decides finally the vital questions now before this court. It is true that the Taylor Case was an action against the railway company to recover damages for the death of an employé, while the present suit was brought by the United States to recover a penalty for failure on the part of the defendant to keep certain safety appliances in good order; but the same section of the safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) as amended by Act April 1, 1896, c. 87, 29 Stat. 85, was construed by the Supreme Court as is now in question, and the construction there put upon it supports the instructions that were given to the jury, and are now complained of, as, I think, the following quotation from Mr. Justice Moody's opinion will make clear. He said, inter alia:

"The plaintiff in error raises another question, which, for the reasons already given, we think is of a federal nature. The evidence showed that drawbars, which, as originally constructed, are of standard height, are lowered by the natural effect of proper use; that, in addition to the correction of this tendency by general repair, devices called shims, which are metallic wedges of different thickness, are employed to raise the lowered drawbar to the legal standard; and that in the caboose of this train the railroad furnished a sufficient supply of these shims, which it was the duty of the conductor or brakeman to use as occasion demanded. On this state of the evidence the defendant was refused instructions, in substance, that if the de-

fendant furnished cars which were constructed with drawbars of a standard height, and furnished shims to competent inspectors and trainmen, and used reasonable care to keep the drawbars at a reasonable height, it had complied with its statutory duty, and, if the lowering of the drawbar resulted from the failure to use the shims, that was the negligence of a fellow servant, for which the defendant was not responsible. In deciding the questions thus raised, upon which the courts have differed (St. Louis & S. F. R. Co. v. Delk [C. C. A.] 158 Fed. 931), we need not enter into the wilderness of cases upon the common-law duty of the employer to use reasonable care to furnish his employé reasonably safe tools, machinery, and appliances, or consider when and how far that duty may be performed by delegating it to suitable persons for whose default the employer is not responsible. In the case before us the liability of the defendant does not grow out of the common-law duty of master to servant. The Congress, not satisfied with the common-law duty and its resulting liability, has prescribed and defined the duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.'. There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the Legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the lawmaking body. It is said that the liability under the statute, as thus construed, imposes so great a hardship upon the railroads that it ought not to be supposed that Congress intended it. Certainly the statute ought not to be given an absurd or utterly unreasonable interpretation leading to hardship and injustice, if any other interpretation is reasonably possible; but this argument is a dangerous one, and never should be heeded where the hardship would be occasional and exceptional. It would be better, it was once said by Lord Eldon, to look hardship in the face, rather than break down the rules of law. But when applied to the case at bar the argument of hardship is plausible only when the attention is directed to the material interest of the employer to the exclusion of the interests of the employé and of the public. Where an injury happens through the absence of a safe drawbar, there must be hardship. Such an injury must be an irreparable misfortune to some one. If it must be borne entirely by him who suffers it, that is a hardship to him. It is quite conceivable that Congress, contemplating the inevitable hardship of such injuries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to impose their burdens upon those who could measurably control their causes, instead of upon those who are in the main helpless in that regard. Such a policy would be intelligible, and, to say the least, not so unreasonable as to require us to doubt that it was intended, and to seek some unnatural interpretation of common words."

Upon this point the charge to the jury in the present case was as follows:

"I have not heard any argument made to you with regard to the question of reasonable care and diligence. The question is, however, raised by one of the points that is presented to me by the defendant, and therefore I say to you in a word that the question of reasonable care and diligence that may have been exercised by the defendant is not a matter for your consideration. As I understand this statute, the railroad company is bound to discover defects, if they exist, under the circumstances as they have been offered to us upon this trial. I am not dealing with anything except the facts that are

now before us. Here is a case in which this car has been shown to have been at rest at East Penn Junction for a number of hours, and therefore when there was an opportunity to inspect upon the part of the railroad company. Now, under such circumstances, my reading of the statute is that it imposes upon the company the duty to find the defects, if defects exist, and that it must find them at its peril. If its inspectors failed to find them, then the liability for the penalty exists if the car is afterwards moved without having the defects repaired. That, as I understand, is the case for your determination. If you are not satisfied from all the evidence in the case that the government has by clear and satisfactory evidence made out that this car was hauled in a defective condition between East Penn Junction and Cementon, then you ought to find in favor of the defendant. If they have satisfied you that this car was so defective at the time when it left East Penn Junction that it could not be automatically coupled and could not be uncoupled without the necessity of somebody going between the cars to perform that operation, then your verdict ought to be in favor of the United States for the sum of $100."

Upon the authority of the Taylor Case therefore the motion for a new trial is overruled.